IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL YAGER, | ) <br> ) Case No. 1:16-cv-4632 <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) <br> ) |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

**COMPLAINT TO RECOVER LONG-TERM DISABILITY BENEFITS DUE AND CLARIFICATION AS TO RIGHTS UNDER THE PLAN**
**29 U.S.C. § 1132(a)(1)(B)**

Now comes Plaintiff, MICHAEL YAGER, by and through his attorneys, MICHAEL BARTOLIC, and THE LAW OFFICES OF MICHAEL BARTOLIC, LLC, and complaining against the Defendant, he states:

**NATURE OF THE ACTION**

1. This claim arises from Unum's pattern of disregarding objective proof of disability a claimant supplies after a claim denial because the proof did not exist before the denial, thereby creating an impossible standard to meet in order to successfully appeal an ERISA benefit denial. In addition, Unum disregards employer statements regarding duties, effectively calling the employer a liar, because the occupation the claimant performs would not suit a claim denial.

2. The result of this bias and adversarial behavior of a fiduciary was to deny Plaintiff's claim for disability benefits where objective testing showed Plaintiff cannot meet the driving element of his occupation, which Unum agreed is required under either

arguable definition of the occupation. There simply was no amount of proof that could have satisfied Unum to pay the claim.

3. Plaintiff is seeking payment of Long-Term Disability ("LTD") insurance benefits under a group disability insurance policy insured by United of Omaha Life Insurance Company pursuant to 29 U.S.C. § 1132(a)(1)(B), of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff also seeks attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

## JURISDICTION AND VENUE

4. Jurisdiction of the Court is based upon ERISA, and in particular, 29 U.S.C. § 1132(e)(1) and § 1132(f). Those provisions give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

5. The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

6. An ERISA action may be brought in the federal judicial district where the Plan is administered, where the alleged ERISA breach took place, or where a defendant resides or may be found. The breach occurred within the Northern District of Illinois where Plaintiff resides, and the plan is administered in this district. Venue is thus proper in the United States District Court for the Northern District of Illinois. 29 U.S.C. § 1132(e)(2).

## PARTIES

7. Plaintiff, MICHAEL YAGER ("Yager" or "Plaintiff") is a former employee of Tovar Snow Professionals, Inc. ("Tovar"), which sponsors a long-term disability insurance plan for its employees, insured by group policy number 405858 002.

2

Incident to his employment with Tovar, Yager received coverage under the plan as a "participant" as that term is defined by 29 U.S.C. § 1002(7). This claim relates to benefits under the employee welfare benefit plan insured by the above-mentioned group insurance policy.

8. Defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA ("Unum") fully insures Tovar's long-term disability insurance plan through policy number 405858 002, (attached hereto as Plaintiff's Exhibit #1). Unum is the claim review fiduciary of the plan, insures the plan, and is responsible for paying any LTD benefits under the plan. Due to its dual role as decision-maker of benefit claims and payor of benefits, Unum suffers from a structural conflict of interest that influenced and biased its decision to deny Yager's claim for LTD benefits.

## RELEVANT POLICY PROVISIONS

9. The applicable definition of "Disabled" in the insurance policy is: "You are unable to perform the **material and substantial duties** of your **regular occupation** and are not working in your regular occupation or any other occupation." (Ex. 1).

10. The policy defines material and substantial duties as duties that "are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified."

11. "**Regular Occupation**" means "the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location."

3

**STATEMENT OF FACTS**

12. Yager worked as an Account Manager at Tovar until January 4, 2015, when he was no longer able to sustain working due to his symptoms of (1) cervical disc disease with radicular pain in his back radiating down his legs, and (2) thoracic outlet syndrome, Complex Regional Pain Syndrome ("CRPS"), and brachial plexus neuritis, causing pain and numbness in his shoulder and arm.

13. Prior to working at Tovar, Yager finished high school in 1981, earning C and D marks, grasping "hands on" learning better than academics. He completed an apprenticeship as a bricklayer, and worked as a bricklayer until 2006. For 6 years in the winter, Yager worked for Tovar as an independent contractor driving a snowplow in the winters.

14. In 2006, Yager was involved in a car accident in which he suffered significant physical injuries, requiring three surgeries to his neck and chest areas.

15. After these surgeries, Tovar hired Yager as an Account Manager, which is a sales position. This position required Yager to drive throughout the Midwest to accounts, spending approximately 20–25 hours per week driving. His employment records document driving approximately 1200 miles per week for work.

16. Yager was based in East Dundee, Illinois, and his territory extended South to Peoria and East to Indianapolis. Before he went on disability leave, he trained a new Account Manager for that territory, and Yager took over managing accounts in the St. Louis territory, thereby increasing the amount of time Yager would have to drive. When he had to travel, Yager would thus be required to drive for up to 5–6 hours each way without stopping.

17. In the winter season, Yager had to assist with servicing the customers when necessary, which required him to lift and carry 50-pound bags of salt. The position also required some limited shoveling. In the spring, he was responsible for completing repairs to client properties and to snow removal equipment, requiring travel to client sites. In the summer, Yager had to develop and further account relationships, which also required travel to client sites.

18. In the Spring, Yager had to review, negotiate, and execute agreements with customers, meeting with the clients to ensure equipment was in good working order.

19. While Yager had to travel year-round, the seasonal nature of the business made his winter hours about 12-hour days, every day, because he had to manage the account and help service it.

20. In 2014, Yager's symptoms returned from years ago and several surgeries ago. After this surgery, Yager returned as an "interim branch manager." In addition to all his normal winter-time duties as Account Manager, Yager also served as the interim branch manager and oversaw the operations of the satellite offices.

21. Shortly thereafter, Yager's symptoms prevented him from performing his usual and routine work, which was that of the Account Manager. The pain and numbness in his right arm and hand interfered with data entry. Pain in his back radiating down his leg and to his foot prevented him from performing the necessary driving, which required Yager to sometimes drive for several hours straight, sitting continuously and using his right leg to apply the accelerator and brake. Yager's CRPS also precluded him from using his arm to drive for extended periods, and from doing the work to help

service the clients in the winter (like helping clean the snow, carry salt bags, shovel, etc.). The general pain and fatigue likewise prevented him from working the hours required in the winter season.

22. Yager claimed disability benefits. Unum asked Tovar for Yager's title, and Tovar responded "branch manager." Unum did not specify it made any difference under the insurance policy whether this was a permanent or interim position. Understandably, neither Tovar nor Yager desired to make a misrepresentation to the insurer.

23. Unum asked Tovar if there had been any change to the territory Yager worked. Tovar responded that Yager had recently taken over the St. Louis region after transferring his territory to a new trainee, thereby indicating Yager was still routinely performing the duties of an Account Manager.

24. Unum nevertheless denied the claim, concluding a branch manager is a sedentary, office position, and that Yager could meet the physical demands, despite his work history showing he had no experience or qualification for such a management occupation.

25. When Yager appealed, he submitted a functional capacity evaluation showing he could not meet the driving aspect of the occupation. He included clarification from Tovar that his position was an "interim" position, not permanent, and that his routine duties were those of Account Manager. He also submitted a vocational opinion that analyzed the occupation, and concluded with Yager's objectively measured physical deficits, he could not meet several of the requirements of an Account Manager.

6

26. Unum discounted all this evidence, without relying on anything to contradict it. Despite Tovar's clarification, necessitated only by Unum's failure to specify that the policy definition of the occupation treats temporary roles differently from permanent ones, Unum wholly discounted the clarification because Tovar did not initially provide it.

27. Unum agreed that Yager's occupation requires significant driving, whether it is Account Manager or Branch Manager, but disregarded the objective functional capacity evaluation demonstrating he cannot meet that requirement by reasoning the examination did not take place at the same time as Unum's benefit denial.

28. Unum's rationale—that it can disregard tests that are not "time concurrent" with its denials—has been repeatedly held arbitrary and capricious by courts. In addition, such a rationale would create an impossible standard whereby claimants could never successfully appeal an ERISA benefit denial. This rationale is likewise contrary to the requirement in 29 C.F.R. 2560.503-1 that an adverse benefit determination notify a claimant of what evidence the claimant can obtain and submit to perfect his claim with the statement of why such evidence is necessary.

29. Upon information and belief, Unum has an internal policy, training, or guidance teaching claims reviewers to disregard objective test results when claimants obtain them after a benefit termination or denial. Plaintiff is aware of at least one other adverse benefit determination by Unum using the same rationale, that the test post-dates the adverse decision, issued by a different claim reviewer, reviewing a claim under a different insured benefit plan, within the same month as this decision.

30. Plaintiff does not have access to this information, and Unum has not included any such materials in the record.

## EXHAUSTION OF INTERNAL CLAIM PROCEDURES

31. On August 7, 2015, Unum denied Yager's claim for long-term disability insurance, constituting an adverse benefit determination as defined in 29 C.F.R. § 2560.503-1.

32. On February 3, 2016, Yager timely appealed that adverse benefit determination.

33. On March 9, 2016, Unum upheld its prior adverse benefit determination, constituting a final administrative denial.

34. Unum's denial of Yager's claim was contrary to the terms of the plan.

35. As a direct and proximate result of Unum's denial of Yager's claim for benefits, there has been created a case of actual controversy by and between the parties hereto entitling Plaintiff to a declaration of rights clarifying the benefits to which she is entitled under the plan.

36. All administrative remedies and conditions precedent have been exhausted and this claim for benefits is ripe for adjudication.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against Unum;

B. That the Court order Plaintiff's payment of all past-due long-term disability benefits under the terms of the insurance policy; and

C. That the Court order Unum to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

D. That the Court award Plaintiff her reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit;

E.	That the Plaintiff recovers any and all other relief to which he may be entitled.

					Respectfully submitted,

					MICHAEL YAGER

Dated: April 25, 2016		By:	/s/ Michael Bartolic
						One of the Attorneys for the Plaintiff

Michael Bartolic
THE LAW OFFICES OF MICHAEL BARTOLIC, LLC
208 South LaSalle Street
Suite 1420
Chicago, Illinois 60604
Tel: 312-635-1600
Fax: 312-635-1601
mbartolic@michaelbartolic.com
apool@michaelbartolic.com